# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. TERRANCE PAYNE HAYES, Defendant. | No. CR23-4068-LTS-KEM<br><br>**ORDER ON REPORT AND RECOMMENDATION** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) in which the Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge, recommends that I deny defendant Terrance Hayes' motion (Doc. 43) to suppress. *See* Doc. 56. Hayes filed timely objections (Doc. 57) and the Government filed a response (Doc. 59), along with its own objections (Doc. 59 at 3).

## II. BACKGROUND

### A. *Procedural History*

On November 16, 2023, the Grand Jury returned an indictment (Doc. 2) charging Hayes with possession of a firearm by a felon, drug user and person convicted of domestic violence, in violation of 18 U.S.C. §§ 922(g)(1), (3) and (9) (Count 1), and possession of a stolen firearm, in violation of 18 U.S.C. § 922(j) (Count 2). Judge Mahoney found good cause to extend the pretrial motions deadline, which I affirmed on appeal. Docs. 36, 47. Hayes filed his motion (Doc. 43) to suppress on May 28, 2024. The Government filed its resistance (Doc. 48) on June 12, 2024.

Judge Mahoney conducted a suppression hearing on July 1, 2024.[1]  Doc. 55.  The Government presented testimony from Sioux City Police Department Detective Justus Knudsen.  *Id*.  Judge Mahoney also received the following exhibits into evidence:

> Government Exhibit 1:  Detective Knudsen's body camera video of July 17, 2023, interview;
>
> Government Exhibit 2.1 and 2.2:  Detective Knudsen's body camera video of July 18, 2023, interview;
>
> Government Exhibit 3:  Detective Knudsen's body camera video of July 24, 2023, interview;
>
> Government Exhibit 4.1 and 4.2:  Video recording of August 11, 2023, interview; and
>
> Defense Exhibit A:  Hayes' medical records (sealed) (Doc. 54).

*See* Doc. 58.  Judge Mahoney filed the R&R on July 23, 2024.

**B.     *Relevant Facts***

Section I of the R&R contains detailed findings of fact.  Doc. 56 at 2-7.  Hayes has raised no objections to these facts.  Doc. 57 at 1, n. 1.  The Government states that it "objects to the facts found (*e.g.,* that strong arm-tactics were used by police)[]."  Doc. 59 at 3.  However, this objection concerns Judge Mahoney's characterization of the facts in her analysis, not the facts set forth in the "Facts and Background" section.  *See* Doc. 56 at 13 (describing the police's tactics in Hayes' interview as "strong arm").  As such, the "Facts and Background" section is incorporated herein.  The facts described in that section will be referenced as necessary in my discussion of the parties' objections.

---

[1] The hearing transcript is available at Doc. 58.

2

Case 5:23-cr-04068-LTS-KEM    Document 63    Filed 08/27/24    Page 2 of 14

## III. STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

3

## IV. DISCUSSION

Hayes objects to the following conclusions in the R&R: (1) Hayes was not in custody during his July 18, 2023 hospital bed interview and thus was not required to be Mirandized; (2) the interrogation tactics during Hayes' August 11, 2023, police station interview were not so coercive as to overbear Hayes' will; and (3) Hayes did not invoke his right to remain silent when he stated that he wanted to leave if he was not being detained. Doc. 57. The Government objects to the following portions of the R&R: (1) Judge Mahoney's characterization of the facts that the police used strong arm tactics during Hayes' police station interview; (2) Judge Mahoney's finding that Hayes was in custody at the police station; and (3) Judge Mahoney's "dicta that it was 'clear' [Hayes] wanted to end the interview." Doc. 59 at 3.

### A.   *The Hospital Bed Interview*

Hayes first argues that he was in custody during the July 18, 2023, hospital bed interview, and thus law enforcement was required to advise him of his rights under *Miranda v. Arizona,* 384 U.S. 436 (1966). Doc. 57 at 2. In *United States v. Griffin,* 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit listed six "decidedly non-exhaustive" factors to help determine whether an individual is in custody for *Miranda* purposes:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

\*   \*   \*

> The first three of these factors may be fairly characterized as mitigating factors, that is to say the affirmative presence of one or more of these factors during questioning would tend to mitigate the existence of custody at the time of the questioning. Conversely, the remaining three factors may be characterized as coercive factors, which is to say that the affirmative presence of one or more of these factors during questioning would tend to aggravate the existence of custody.

*Id.*

The Eighth Circuit later clarified:

> There is no requirement … that the *Griffin* analysis be followed ritualistically in every *Miranda* case. When the factors are invoked, it is important to recall that they are not by any means exclusive, and that "custody" cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly. Exploring the nuances of such vague factors as "voluntary acquiescence," "strong arm tactics," and "police-dominated atmosphere" in order to place them on one side or the other of a balancing scale may tend to lose sight of the forest for the trees. The ultimate inquiry must always be whether the defendant was restrained as though he were under formal arrest. And the court must consider whether the historical facts, as opposed to the one-step-removed Griffin factors, establish custody. The debatable marginal presence of certain judicially-created factors that ostensibly tend to "aggravate the existence of custody" cannot create the functional equivalent of formal arrest where the most important circumstances show its absence.

*United States v. Czichray,* 378 F.3d 822, 827-28 (8th Cir. 2004). As such, I will apply the *Griffin* factors to the July 18, 2023, hospital bed interview, but my "ultimate inquiry will … be whether [Hayes] was restrained as though he were under formal arrest." *Id.*; *see also California v. Beheler,* 463 U.S. 1121, 1125 (1983) ("Although the circumstances of each case must certainly influence a determination of whether a suspect is 'in custody' for purposes of receiving *Miranda* protection, the ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest.").

Turning to the "mitigating" *Griffin* factors, under the first factor, law enforcement did not tell Hayes that the interview was voluntary or that he could ask the officers to leave. This factor supports a finding of custody. Under the second factor, Hayes may have been restrained by his injuries, but this factor only considers "the restraint imposed by the government agents." *United States v. New,* 491 F.3d 369, 373 (8th Cir. 2007). Other courts have explained that a finding of restraint requires the police to have imposed "*additional* restraints" on the person being interrogated. *United States v. Jamison,* 509 F.3d 623, 629 (4th Cir. 2007) (quoting *United States v. Conley,* 779 F.2d 970, 973 (4th Cir. 1985)). Here, no such additional restraints were present. The officers arrived in Hayes' room and calmly asked him questions, never giving the impression that Hayes could not ask them to leave. This factor weighs against a finding of custody.

Under the third factor, law enforcement initiated the interview, but this factor is less mitigating due to the fact that Hayes voluntarily acquiesced to the questioning, even asking officers to stay when they prepared to leave after about an hour. This factor neither weighs in favor nor against a finding of custody.

Turning to the aggravating *Griffin* factors, under the fourth factor, officers did not use strong arm tactics during the hospital interview, but rather spoke pleasantly with Hayes for about 90 minutes. See *United States v. Plumman,* 409 F.3d 919, 925 (8th Cir. 2005) (finding that defendant was not in custody although FBI interview "lasted a considerable period of time, an estimated three and one-half hours without intervening breaks"). Hayes argues that promising him he would not be prosecuted for a firearms charge constitutes a deceptive stratagem. Doc. 57 at 2. The officers stating that they did not want to "jam" Hayes with a firearms charge, but later referring his firearms offense to the United States Attorney's Office for prosecution, may have been deceptive. However, the Eighth Circuit has explained that "some degree of coercion is part and parcel of the interrogation process and that the coercive aspects of a police interview are largely irrelevant to the custody determination except where a reasonable person would perceive the coercion as restricting his or her freedom to depart." *United States v.*

6

*LeBrun,* 363 F.3d 715, 721 (8th Cir. 2004). Here, officers interviewed Hayes as a victim of an attack, and as part of that interview process were trying to get all the details from Hayes. Attempting to find out where the gun originated and implying that Hayes would not face gun charges if he was truthful would not make a reasonable person believe that he or she did not have the option to terminate the interview. As such, the officers' statements that they did not want to "jam" Hayes with a gun charge do not weigh in favor of custody.

As to the fifth factor, I find that the hospital room was not police dominated. In determining whether an interview is police dominated, the Eighth Circuit looks to the "place and length of the interrogation" as well as whether law enforcement take "full control of the scene" through actions such as "removing a suspect from the presence of third persons who could lend moral support". *Griffin,* 922 F.2d at 1352. Here, the only factor weighing in favor of police domination is the presence of three uniformed officers. The interview did not take place at a police station. Law enforcement did not remove third persons from the scene. Though a nurse who was attending to Hayes left shortly after law enforcement arrived, it does not appear that the officers asked her to do so. There is no indication that Hayes was prevented from requesting assistance from medical staff during the interview. Further, the interview was not of an exceptionally-lengthy duration and the police officers spoke to Hayes calmly. This factor weighs against a finding of custody. The sixth factor likewise weighs against a finding of custody, as Hayes was not placed under arrest at the end of the interview.[2]

---

[2] While Judge Mahoney correctly points out that the Eighth Circuit has deemphasized this factor, she also points out that the Supreme Court still considers whether a suspect was released at the conclusion of an interview to be an important factor in determining custody. *Compare United States v. Treanton,* 57 F.4th 638, 641 (8th Cir. 2023) (questioning why an arrest at the end of conclusion is a relevant factor when the ultimate inquiry is "how a reasonable man in the suspect's position would have understood his situation."), *with Howes v. Fields,* 565 U.S. 499, 509 (2012) (listing release after questioning as relevant factor). Because the Supreme Court still considers this to be a relevant factor, I will weigh it when considering whether Hayes was in custody.

In short, only one *Griffin* factor weighs strongly in favor of a finding of custody, while four factors weigh against a finding of custody. Of course, and as the Eighth Circuit has cautioned, the issue of "'custody' cannot be resolved merely by counting up the number of factors on each side of the balance and rendering a decision accordingly." *Czichray,* 378 F.3d at 827. However, when considering the ultimate inquiry of "whether [Hayes] was restrained as though he were under formal arrest", I find that he was not. *Id.* at 828. Three officers spoke to Hayes in a hospital room for a relatively short period of time in a calm manner, they did not assert control of the scene, they did not add any additional restraints to Hayes' freedom of movement, they attempted to leave after about an hour but were summoned back by Hayes and no arrest was made at the conclusion of the interview. These circumstances do not bear the hallmarks of restraints that resemble formal arrest and should have led Hayes to believe that he was free to end the interview when he wished to do so. As such, Hayes' objection to Judge Mahoney's conclusion that he was not in custody during the July 18, 2023, hospital interview is **overruled.**

### B. *The Police Station Interview*

Before discussing Hayes' objections to the R&R's conclusions regarding the August 11, 2023, police station interview, I will discuss two of the Government's objections. First, the Government objects to Judge Mahoney's conclusion that the police station interview became custodial after Hayes stated that he wished to leave. To determine whether the interview became custodial at that point, I will again apply *Griffin* and *Czichray*. This will also resolve the Government's second objection, which addresses Judge Mahoney's conclusion that the officers used strong arm tactics in the interview.

Judge Mahoney correctly identified Detective Sitzman's entry into the room, just over 50 minutes into the interview, as the time when the tenor of the interview changed. Doc. 56 at 13. After this point, nearly every *Griffin* factor favors a finding of custody. Though Hayes was informed at the beginning of the interview that he could leave at any time, when he attempted to do so he was ordered back into the interview room and

8

questioning became more aggressive. He was not allowed to wait in the hallway for his wife and the officers blocked the interview room door. They also initiated the questioning after Hayes attempted to leave, even threatening to "switch gears" to a murder investigation if Hayes was not cooperative.

Further, I agree with Judge Mahoney that law enforcement used strong arm tactics. "Strong arm tactics can include confronting suspects with false or misleading witness statements, repeatedly lying to the suspect, or employing a good cop-bad cop routine." *United States v. Peterson,* No. CRIM. 14-328 JRT/FLN, 2015 WL 1585507, at *7 (D. Minn. Apr. 2, 2015) (citing *United States v. Beraun-Panez,* 812 F.2d 578, 580 (9th Cir.1987)). Here, after Hayes stated that he wished to go home, Detective Knudsen and Detective Sitzman employed a "good cop-bad cop routine" with Knudsen playing the good cop by calmly speaking with Hayes and Sitzman playing the bad cop by raising his voice and threatening to "switch gears" to a murder investigation. At one point, there were three police officers in the room, with Sergeant Sanders blocking the door, which is made even more aggravating by the fact that Hayes had already stated that he wished to leave. Each of these facts weighs in favor of a finding that law enforcement used strong arm tactics. The Government's objection to this finding is **overruled.**

I further find that the interview was police dominated. The Eighth Circuit has found that "Mutt and Jeff" (or "good cop-bad cop") techniques contribute to a police-dominated atmosphere, and as discussed above, law enforcement employed such a technique here. *United States v. Carter,* 884 F.2d 368, 372 (8th Cir. 1989) (citing *Miranda,* 384 U.S. at 452, 455). Further, as discussed in the section regarding the hospital bed interview, "removing a suspect from the presence of third persons who could lend moral support" weighs in favor of a finding of custody. *Griffin,* 922 F.2d at 1352. Hayes attempted to leave the interview so that he could be with his wife but was ushered back into the interview room with multiple law enforcement officers. This supports a finding that the interview became police-dominated and thus weighs in favor of custody.

9

The only factor weighing against custody is that Hayes was not arrested at the end of the interview, however this is not enough to counterbalance the circumstances weighing in favor of custody. Further, I find that "[Hayes] was restrained as though he were under formal arrest." *Czichray,* 378 F.3d at 828. After attempting to leave and find his wife, he was ushered back into the interview room on law enforcement's schedule, the door was blocked and he faced increasingly-hostile questioning. These are not circumstances which would lead a reasonable person to believe that they are free to leave. The Government's objection to Judge Mahoney's conclusion that the police station interview became custodial is **overruled.**

Hayes objects to Judge Mahoney's finding that he did not unambiguously invoke his right to remain silent when he requested to leave the interview. In arriving at this conclusion, Judge Mahoney relied on *United States v. Simpson,* 44 F.4th 1093 (8th Cir. 2022), *reh'g denied*, No. 21-2463, 2022 WL 4295416 (8th Cir. Sept. 19, 2022), and *cert. denied*, 143 S. Ct. 813 (2023). In *Simpson,* the Eighth Circuit stated:

> [A] suspect's invocation of his right to remain silent must be clear and unequivocal. *Berghuis v. Thompkins,* 560 U.S. 370, 381-82, 130 S. Ct. 2250, 176 L.Ed.2d 1098 (2010); *United States v. Adams,* 820 F.3d 317, 323 (8th Cir. 2016).
>
> Simpson's repeated statements that he wished to go home were not unambiguous invocations of his right to remain silent. "[T]he prospect of going home would naturally be of great interest to any suspect undergoing interrogation," but like the Eleventh Circuit, we are not persuaded that a statement about wanting to go home "evidences a refusal to talk further." *Moore v. Dugger,* 856 F.2d 129, 134 & n.1 (11th Cir. 1988). That Simpson reiterated the wish many times does not transform his expression of a desire to be elsewhere into an unambiguous assertion of the right to remain silent. Simpson was informed in the Miranda warnings that he had a right to remain silent, but he never asserted that right, and he continued to answer questions for more than fifty minutes after first stating that he wanted to go home.

*Id*. I agree with Judge Mahoney that *Simpson* is on point.[3] Hayes may have reiterated his wish to leave the interview multiple times, but under Eighth Circuit precedent, this is not a "clear and unequivocal" invocation of his right to remain silent. As such, Hayes' objection is **overruled.**

Relatedly, the Government objects to Judge Mahoney's "dicta that it was 'clear' [Hayes] wanted to end the interview." Doc. 59 at 3. The relevant section of the R&R reads:

> To me, it seems clear that Hayes wanted to cut off questioning. But if remaining silent for two hours and forty-five minutes is ambiguous, and saying over and over again that you want to go home is ambiguous, then I feel bound by precedent to find that Hayes's requests to leave were ambiguous.

Doc. 56 at 18. There is nothing objectionable or incorrect about Judge Mahoney's analysis. She expressed her conclusion that, in her view, it appeared that Hayes wanted to cut off questioning. However, she then properly applied Eighth Circuit precedent and ruled in the Government's favor. The Government's objection is **overruled.**

Finally, Hayes objects to Judge Mahoney's conclusion that the interrogation tactics during the police station interview were not so coercive as to overbear Hayes' will. Doc. 57 at 3-5. Hayes argues that his incriminating statements during the police station interview were involuntary, and thus inadmissible, because he was falsely promised that he would not be prosecuted for a firearms charge, was threatened with a murder investigation when those promises failed and was not allowed to leave the interview when he requested to do so. *Id.* at 4. Under the Fifth Amendment's right against self-incrimination and the Due Process Clause, the Government must show that a confession is voluntary before it may be used against a defendant at trial. *United States v. LeBrun,*

---

[3] Judge Mahoney further pointed out distinguishing facts from the underlying district court opinion in *Simpson* but concluded that "*Simpson* paints with broad strokes and holds that when a suspect says he wants to go home—which would necessarily end the interview—he does *not* unambiguously indicate that he wants to end the interview." Doc. 56 at 17. I agree.

363 F.3d 715, 719-20 (8th Cir. 2004). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact that the law enforcement authorities adhered to the dictates of *Miranda* are rare." *Berkemer v. McCarty,* 468 U.S. 420, 433, n. 20 (1984).

> To determine whether a statement is involuntary, the Eighth Circuit has stated:
>
> "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. LeBrun,* 363 F.3d 715, 724 (8th Cir. 2004) (quoting *Simmons v. Bowersox,* 235 F.3d 1124, 1132 (8th Cir. 2001)). "We determine if a defendant's will has been overborne by examining the totality of the circumstances, including both the conduct of law enforcement in exerting pressure to confess on the defendant and the defendant's ability to resist that pressure." *United States v. Brave Heart,* 397 F.3d 1035, 1040 (8th Cir. 2005). "Even assuming that a reasonable person would view [an officer's] statements as a promise, a promise made by law enforcement does not render a confession involuntary per se. It is simply one factor to be considered in the totality of the circumstances." *Id.* at 1041 (quotations omitted).
>
> Factors include "the degree of police coercion, the length of the interrogation, its location, its continuity, and the defendant's maturity, education, physical condition, and mental condition." *United States v. Boslau,* 632 F.3d 422, 428 (8th Cir. 2011) (quotation omitted). "[T]actics, including claiming not to believe a suspect's explanations, making false promises, playing on a suspect's emotions, using his respect for his family against him, deceiving the suspect, conveying sympathy, and even using raised voices," do not "render a confession involuntary … unless 'the overall impact of the interrogation caused the defendant's will to be overborne.'" *Brave Heart,* 397 F.3d at 1041 (quoting *Jenner v. Smith,* 982 F.2d 329, 334 (8th Cir. 1993)).

*United States v. Magallon,* 984 F.3d 1263, 1284 (8th Cir. 2021). I agree with Judge Mahoney that the interrogation tactics were not so coercive as to overbear Hayes' will. Even accepting as true Hayes' claim that the officers promised not to charge him with a firearms offense, the "overall impact" of this tactic was not enough to "cause[] [Hayes'] will to be overborne." *Brave Heart,* 397 F.3d at 1041. Hayes is in his forties, describes

12

himself as "street smart" and has a long history dealing with law enforcement. Doc. 58 at 9, 47, 52; *United States v. Gallardo-Marquez,* 253 F.3d 1121, 1123-34 (8th Cir. 2001) (defendant's average intelligence and prior contact with law enforcement weighed in favor of confession being voluntary).

While I have found that law enforcement converted a non-custodial interview into a custodial interview, the entire interview lasted a relatively short period of time, about one and a half hours, with the custodial portion lasting well under one hour. *See e.g., Jenner v. Smith,* 982 F.2d 329, 334 (8th Cir. 1993) (holding that "six or seven hour[]" questioning was not per se unconstitutionally coercive); *United States v. Makes Room,* 49 F.3d 410, 415 (8th Cir. 1995) (noting that interrogation lasting more than two hours was not coercive in duration)*; Sumpter v. Nix,* 863 F.2d 563, 565 (8th Cir. 1988) (finding confession was voluntary despite a seven and one-half hour interrogation). Further, while physically keeping Hayes in the interview room weighs in favor of coercion, the fact that he had been Mirandized lessens the coerciveness of the police's conduct. *Berkemer*, 468 U.S. at 433, n.20 (1984).

Hayes' argument that law enforcement's threats of a murder investigation constituted coercion sufficient to overbear his will also fails. Rather than being a coercive threat, Sitzman's statement that they would "switch gears" to a murder investigation represented an "accurate representation[] of [Hayes'] predicament." *Gallardo-Marquez,* 253 F.3d at 1123; Doc. 58 at 33. At the time of the police station interview, law enforcement had several theories about what had transpired the night of the shooting. Doc. 58 at 33. The fact that Hayes told inconsistent stories about the source of the gun could lend credibility to one of the theories of him as a perpetrator, leading to a murder investigation. *Id*. Thus, the truthfulness of the purported threats, when coupled with Hayes' age, "street smart[s]" and history of police interaction, were not enough to "cause[] Hayes' will to be overborne." *Brave Heart,* 397 F.3d at 1041; *see also United States v. Sanchez,* 614 F.3d 876, 884 (8th Cir. 2010) (threatening to charge suspect with attempted murder and assault with a deadly weapon "was not a threat, but rather a truthful

13

response" when suspect was later charged with assault with a deadly weapon).[4] As such, I agree with Judge Mahoney that Hayes' incriminating statements were voluntary. Hayes' objection is **overruled.**

## V. CONCLUSION

For the reasons set forth herein:

1. Hayes' objections (Doc. 57) to the Report and Recommendation (Doc. 56) are **overruled**.

2. The Government's objections (Doc. 59 at 3) to the Report and Recommendation (Doc. 56) are **overruled.**

3. The Report and Recommendation (Doc. 56) is hereby **accepted in its entirety**.

**IT IS SO ORDERED** this 27th day of August, 2024.

Leonard T. Strand
United States District Judge

---

[4] Hayes argues that a murder investigation would have been "baseless," however this characterization is only true with the benefit of hindsight. Doc. 57 at 3. Unlike in *Sanchez,* where the suspect was later charged with what law enforcement had threatened, Hayes was not later charged with murder. However, this does not mean that the officers' threats of a murder investigation were baseless. Rather, this was a truthful statement at the time based on Hayes' inconsistencies and different theories the police were investigating. *See* Doc. 58 at 33.

14

Case 5:23-cr-04068-LTS-KEM   Document 63   Filed 08/27/24   Page 14 of 14